JOHNSON, *Plaintiff in Error* v. SCHOOL DISTRICT.

1 **Liability of School District for Supplies:** POWER OF DIRECTORS TO CONTRACT: SCHOOL ORDERS: CLERK. No action can be maintained against a school district upon an order drawn on the township treasurer by one or more of the directors of the district, for the price of maps, globes, &c., purchased by them for the use of the district without authority of the board; nor can an action be main tained against a district upon an order not signed by the clerk of the district.

2. **School District:** RATIFICATION OF DIRECTORS' CONTRACT. The fact that articles purchased for the use of the school by one or more of the directors without the authority of the board, have been used in the school, does not amount to a ratification of the purchase, or impose upon the district any obligation to pay for them.

*Error to Washington Circuit Court.*—HON. LOUIS F. DINNING, Judge

*Reynolds & Relfe* for plaintiff in error, cited *Page v. Tp. Bd. Education*, 39 Mo. 264; *Rice v. McClelland*, 58 Mo. 121; *Thompson v. Abbott*, 61 Mo. 176.

*Frank Harris* with *John L. Thomas & Bro.* for defendant in error cited *State v. Treasurer of Liberty Tp.*, 22 Ohio

St. 144; *The People v. Peters,* 4 Neb. 254; *Taylor v. Wayne,* 25 Iowa 447; *Jordan v. School District,* 38 Me. 164; *Clark v. School Directors,* 78 Ill. 474.

HENRY, J.—L. B. Higginbotham, Minor A. Baker and Frank E. McGready, on the 25th of February, 1873, were local directors of district No. 1, (the defendant,) and on that day one M. S. Miller saw Higginbotham and Baker seperately, and they purchased of him maps, globes, &c., for the use of the district, and without any consultation with each other or with McGready, signed and delivered to said Miller, orders on the treasurer of the township for the price of said articles. There was neither a meeting of the board, nor even a meeting of or a consultation between the three directors or the two directors who made the purchase, nor at any subsequent meeting of the board was the contract thus made approved, nor was there any entry whatever made upon the records of the district in regard to the transaction. Miller assigned and delivered the orders sued upon to plaintiff, who paid for them a valuable consideration. In the circuit court in a suit instituted by plaintiff on these orders against the district, there was a judgment for defendant, and plaintiff has brought the cause here on a writ of error. The statute, section 8, page 1243, Wag., provides: "The local directors shall have care and keeping of the school house and other property belonging to the sub-district, and make all necessary contracts for providing, (among other things,) all necessary globes, maps, charts and other appliances for the school house, &c. They shall keep in a book provided for that purpose, a true and accurate account of all expenses incurred by them for the sub-district, which expenses shall be paid by the township clerk on the order of the clerk of the sub-district, out of any funds for that purpose belonging to the sub-district." The 5th section, page 1242, requires the directors to meet within five days after their election, and organize by appointing one of their number

clerk of the sub-district, and that he should also preside at the official meetings of the directors and record their proceedings in a book to be provided for that purpose, &c. It also provides that the directors may meet as often as they may deem it necessary for the transaction of business. It appears from the agreed statement of facts that McGready was clerk of the board, but the order was not signed by him.

It is clear that the members of the board in transacting business for the district were to do so in meetings of the board. In purchasing maps and globes, they could only act when assembled together in a meeting as the board of directors, and neither two nor all of the directors acting separately and apart from each other, could bind the district by any contract they might make. The directors were not authorized to draw orders on the township clerk or treasurer to pay for globes or maps, or any other expenses incurred for the district. The law expressly provides that the clerk of the sub-district shall sign such orders, and that they shall be drawn on the township clerk, and unless so drawn and signed the township clerk could not pay them.

Nor does the fact, that the articles purchased were placed and used in the school, amount to a ratification by the district of the acts of the two directors, or impose any obligation upon the district. The inhabitants of the district could not, by their unanimous action, have imposed an obligation upon the district, and, therefore, could not ratify and validate an invalid contract made by the directors. The district could contract, only, in the manner prescribed by law, and the ratification or approval of an invalid contract could only be made by the officer or officers who were authorized in the first instance to make such contract, and even then the ratification must be made by them in the same capacity in which they were required to act in making the contract in the first instance. The ratification of an invalid contract is simply making a valid

contract. The Supreme Court of Iowa in *Taylor v. Distric Township of Wayne*, 25 Iowa 451, held the following language: "The township district is a body corporate, certain powers are reserved by or conferred upon the electors, others are given by law to the district board, and others again to sub-directors. The electors composing the corporate body, act by and through specific agencies, and in the mode prescribed by law. They cannot, as individuals, when not convened at the times and places contemplated by law, vote to raise a tax, authorize the making of a contract, delegate their powers, nor exercise any of the powers conferred upon them, as electors, by law. The law contemplates action by them in their aggregate capacity, when duly and properly assembled, and not the action of each elector by himself, on the streets, at his store or shop, in the church or school house. And the formal, so to speak legislative action by the electors, essential to bind the corporation in the making of a contract, is equally so in the ratification of one which there was no power to make. Thus, to illustrate the assent of a majority of the electors, when not convened, to the levy of a tax, would not authorize its levy. Neither would their subsequent assent in the same manner ratify or make it valid. For, if so, an act, originally without validity, could by a like illegal or unauthorized act be made valid. In other words, two wrongs would make a right. And as the electors could not thus be held as ratifying their own act, certainly they could not as to an act of the board where there was a want of power." We have quoted thus extensively from that opinion, because the case is analogous to the one we are considering, and the views of the court, so well expressed, are in harmony with our own. Again the court said: "Neither the use of the maps in the school nor the failure to object, when an affirmative action was invoked, would amount to a ratification." See also *Clark v. School Directors*, 78 Ill. 474; *Cheeney v. The Inhabitants of Brookfield*, 60 Mo. 53. The circuit court properly held that plaintiff was

not entitled to recover against the district, and its judgment is affirmed. All concur.

AFFIRMED.

HOUGH, J.—I concur in affirming the judgment, but express no opinion as to the right of the plaintiff to recover in any other form of action.